**RAMSEY v. KENNEDY et al.**

No. 10603—Opinion Filed April 11, 1922.

(Syllabus.)

1. **Ejectment—Recovery—Title of Plaintiff.**
In an ejectment action the plaintiff must recover on the strength of his own title, and not upon the weakness of the title of his adversary.

2. **Same—Judgment—Affirmance.**
Record in the cause examined, and held that the plaintiff failed to establish his title, and that the judgment of the trial court be affirmed.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action in ejectment by Gustavus A. Ramsey against Joanna Kennedy et al. Judgment for defendants, and plaintiff brings error. Affirmed.

Hatchett & Ferguson, for plaintiff in error.

Utterback & MacDonald, for defendants in error.

KENNAMER, J. Gustavus A. Ramsey, plaintiff, commenced this action on the 7th day of February, 1916, against the defendants, Joanna Kennedy et al., to recover possession of about five acres of land described in the plaintiff's petition. On the 18th day of March, 1916, the cause came on for trial, and the parties to the action waived a jury and submitted the cause to the court upon the following agreed statement of facts:

"It is hereby stipulated and agreed that this cause shall be submitted, tried, and determined upon the following agreed statement of facts:

"1. That the plaintiff is the owner of by allotment and patent as a member of the Chickasaw Tribe of Indians, the west half of the southwest quarter of section 17, township 8 south, range 8 east of the Indian base and meridian, Bryan county, Okla., except that part thereof segregated for the Colbert town site and M. K. & T. right of way; that the Colbert town site is as shown by the official plat and survey thereof on file with the county clerk of Bryan county, Okla., —' : -id survey, description, and plat is hereby referred to and made a part of this agreement for all purposes.

"2. That the defendant Joanna Kennedy is the owner of lots 3, 4, 5 and 6, in block 22 in the town site of Colbert, Bryan county Okla.. and that she and her grantors have been the owners of said lots since the town site of Colbert was platted and the lots designated and patents issued; patents being issued September 15, 1903; and that she and her grantors have been in possession, not only of the tract of land now known as the lots above described, but also of the property sued for herein. described in the next paragraph, since 1873.

"3. That the defendant Joanna Kennedy and her tenant, H. A. Pritchett, are in possession of that portion of the lands sued for in this action shown by the attached map and designated on the said map as 'No. 5, Thomas G. Rodgers' and 'Thomas G. Rodgers, cultivated.' The accurate description covering the meets and bounds to be later supplied if necessary for any journal entry or judgment rendered in this case; that the

annual rental value of said property is $10 per year.

"4. That when the M., K. & T. Railroad Company was built through the Indian Territory it reserved a right of way through the village of Colbert, 500 feet wide on each side of its track, as shown by the maps heretofore referred to, which said segregation was made by said railroad under a claim by it that it had a right to said segregation by reason of the public domain law of the national government, and that said right of way 500 feet on each side of the track or a total of 1,000 feet was never platted by the town-site commission into town lots or any part thereof, which said railroad company claimed to own said right of way a distance of 500 feet on both sides of its track through the town of Colbert, until the 16th day of March, 1912, on which date it made, executed, and delivered to the plaintiff a quitclaim deed relinquishing all claim to the property in controversy herein, together with other property, which said quitclaim deed is hereby made a part of this agreed statement of facts; that said railroad company was never in possession of that portion of its right of way in controversy herein and never used same for a right of way, depot purposes, or any other railroad purposes; that the plaintiff has been for a long number of years and is now in possession of that portion of said right of way segregation designated on the M., K. & T. map hereto attached as 'Mrs. Mary Etta Miller, No. 6' and 'Geo. A. Ramsey, pasture'; that all the lands and premises sued for herein are within the town-site allotment as shown by said survey and plat heretofore referred to. The patents of the plaintiff to his allotted lands are hereby referred to and made a part of this agreed statement of facts.

"Neither the plaintiff nor the defendant nor her grantors have any patent to the specific lands involved herein.

"Signed this March 17, 1916.

"Hatchett & Ferguson,
"Attorneys for Plaintiff.
"Utterback & MacDonald.
"Attorneys for Defendants."

Judgment was by the trial court entered in favor of the defendants. To reverse the judgment of the trial court the plaintiff, Gustavus A. Ramsey, has prosecuted this appeal and assigned two specifications of error as ground for reversal, to wit:

"First. Error of the court in not holding that the quitclaim deed from the M., K. & T. Railway Company conveyed title to this property.

"Second. For error of the court in not holding that the plaintiff was the owner of said lands by reason of his allotment and

patent to that portion of the S. W. ¼ of section 17 which abuts upon the non-used railroad right of way."

Counsel for the plaintiff state their contentions as follows:

"By reason of the quitclaim deed from the M., K. & T. Railway.

"By reason of his allotment and patent to that portion of the southwest quarter of section 17 which abuts upon the non-used railroad right of way."

It is insisted by counsel for the plaintiff that the Secretary of the Interior, through the Commission to the Five Civilized Tribes, many years ago set aside the property in controversy as a right of way for the M., K. & T. Railway Company. That an early act of Congress authorized the railway company to build its road through the Indian Territory, and that when the lands of the Indian Territory were laid out and surveyed for allotment, the land in question was left unplatted and unsurveyed, but designated by the Department of the Interior as the M., K. & T. right of way. However, the lands in question were never used by the M., K. & T. Railway Company. That in this situation the quitclaim deed executed by the M., K. & T. Railway Company to the plaintiff conveyed to him title to the property in controversy. We cannot agree with counsel in this contention. No act of Congress is cited by counsel in their brief authorizing the Secretary of the Interior to divest the Choctaw and Chickasaw Nations of title in the lands in the manner set out by counsel in their brief or under the facts as disclosed in the agreed statement of facts and transfer the title to the M., K. & T. Railway Company. The agreed statement of facts is that the title of plaintiff was acquired under the federal domain law. The substance of the facts as agreed to are that the M., K. & T. Railway Company claimed to have acquired title. Nowhere is it stipulated that it in fact had title.

Under the second assignment of error counsel for the plaintiff insist that the plaintiff has title by reason of his allotment patent. The agreed statement of facts shows that the plaintiff has a patent to the W. ½ of the S. W. ¼ of section 17, township 8 south, range 8 east, less that part segregated for Colbert town site and the M., K. & T. right of way. It is insisted that as an adjoining owner of the land to the abandoned railroad right of way title to such right of way, on its abandonment, vested in the plaintiff.

Section 14 of the act of Congress approved April 26, 1906, 34 Stat. 137, is relied on by counsel for the plaintiff as sustaining their contention. The part of the act cited reads as follows:

"That the lands in the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Nations reserved from allotment or sale under any act of Congress for the use or benefit of any person, corporation or organization shall be conveyed to the person, corporation or organization entitled thereto: Provided, that if any tract or parcel reserved shall, before the conveyance thereof, be abandoned for the use for which it was reserved by the party in whose interest the reservation was made, such tract or parcel shall revert to the tribe and be disposed of as other surplus lands thereof: Provided, further, that this section shall not apply to land reserved from the allotment because of the right of any railroad or railway company therein in the nature of an easement for right of way, depot, station grounds, water stations, stock yards, or other uses connected with the maintenance and operation of such company's railroad, title to which tracts may be acquired by the railroad or railway company under rules and regulations to be prescribed by the Secretary of the Interior at a valuation to be determined by him; but if any such company shall fail to make payment within the time prescribed by the regulations or shall cease to use such lands for the purpose for which it was reserved, title thereto shall thereupon vest in the owner of the legal subdivision of which the land so abandoned is a part, except lands within a municipality the title to which, upon abandonment, shall vest in such municipality."

The trouble with the contention made by counsel is that the record fails to disclose that the M., K. & T. Railway Company ever acquired any right, title, or interest in the property under the rules and regulations prescribed by the Secretary of the Interior. The agreed statement of facts discloses that the railway company reserved a right of way through the village of Colbert 500 feet wide on each side of its track; that this segregation made by the railway company was by reason of its right to segregate lands under the public domain law of the national government. There is no stipulation as to when the M., K. & T. railroad was built, but the fair inference deducible from the agreed statement of facts is that the title to the lands in question was in the Chickasaw and Choctaw Nations or Tribes of Indians on the date the railroad company attempted to reserve or segregate its right of way. However, it does not appear from the record as to what right or title the M., K. & T. Rail-

way Compan ever had in the lands in question. Therefore, before the plaintiff could predicate any right to the lands under the provisions of the act of Congress, supra, it must appear that the lands were reserved from allotment or sale under the authority of some act of Congress and that the M., K. & T. Railway Company acquired some interest in the lands in the manner provided by statute.

But a more cogent reason why the plaintiff cannot recover as an adjoining owner is that an examination of the record discloses that the lands described in this patent shows that he is not the owner of the legal subdivision as contemplated in the act of the Congress, supra, to the lands in controversy. It is true that he owns part of the W. ½ of the S. W. ¼ of section 17, township 8 south, range 8 east, but an examination of the map and record discloses that the lands patented to the plaintiff do not join the particular lands in controversy. The fact that his allotted lands may join part of the abandoned right of way, but not the particular lands in controversy, would not entitle the plaintiff to recover in this action.

Upon a careful examination of the agreed statement of facts and the record in this cause, we are unable to find sufficient facts disclosed from which it may be determined that the plaintiff has the legal title to the lands in controversy. The rule is well established that in an ejectment action the plaintiff must recover on the strength of his own title, and not on the weakness of the title of his adversary. Linam v. Beck, 51 Okla. 727, 152 Pac. 344; Lynch v. Calkins, 75 Okla. 137, 182 Pac. 225; Starr v. Thompson, 80 Okla. 223, 195 Pac. 758; Reirdon et al. v. Smith et al., 62 Okla. 48, 161 Pac. 798.

Our conclusion is that the plaintiff, under the admitted facts, failed to show that he had title to the lands in question, and that the judgment of the trial court should be affirmed. It is so ordered.

PITCHFORD, V. C. J., and KANE, JOHNSON, and MILLER, JJ., concur.